Rel: January 9, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

————————————

## CL-2025-0419

————————————

### Dr. Scott Harris, in his official capacity as the State Health Officer

### v.

### Oasis Family Birthing Center, LLC, Dr. Heather Skanes, Alabama Birth Center, Dr. Yashica Robinson, Alabama Affiliate of the American College of Nurse-Midwives, Jo Crawford, and Tracie Stone

### Appeal from Montgomery Circuit Court
### (CV-23-901109)

MOORE, Presiding Judge.

This appeal involves the question whether the authority of the

Alabama Department of Public Health to license and regulate hospitals

applies to freestanding birth centers that operate in the midwifery model of care. As fully explained in the following opinion, we hold that it does.

Statutory and Regulatory Background

In 1949, the legislature enacted a law granting the State Board of Health authority over the licensing and regulation of hospitals ("the Hospital Act"). See Ala. Acts 1949, Act No. 530. Section 1 of the Hospital Act defined "hospitals" as follows:

> "As used in th[e Hospital] Act the term 'hospitals' shall mean sanitoria, rest homes, nursing homes and other related institutions when such institution is primarily engaged in offering to the public generally facilities for the diagnosis and treatment of injury, deformity, disease or obstetrical care. The word 'person' includes individuals, partnerships, corporations and associations."

Section 7 of the Hospital Act authorized the State Board of Health to "issue licenses for the operation of hospitals which are found to comply with the provisions of th[e Hospital] Act and any regulations lawfully promulgated by the said State Board of Health." Section 8 of the Hospital Act provided, in pertinent part: "[T]he State Board of Health ... shall have the power to make and enforce, and may modify, amend and rescind, reasonable rules and regulations governing the operation and conduct of hospitals as defined in th[e Hospital] Act."

2

The Hospital Act, as amended over the years, is now codified at Ala. Code 1975, § 22-21-20 et seq. Section 22-21-20(1), Ala. Code 1975, currently defines "hospitals" as:

> "General and specialized hospitals, including ancillary services; independent clinical laboratories; rehabilitation centers; ambulatory surgical treatment facilities for patients not requiring hospitalization; end stage renal disease treatment and transplant centers, including free-standing hemodialysis units; abortion or reproductive health centers; hospices; health maintenance organizations; <u>and other related health care institutions when such institution is primarily engaged in offering to the public generally, facilities and services for the diagnosis and/or treatment of injury, deformity, disease, surgical or obstetrical care</u>. Also included within the term are long term care facilities such as, but not limited to, skilled nursing facilities, intermediate care facilities, assisted living facilities, and specialty care assisted living facilities rising to the level of intermediate care. The term 'hospitals' relates to health care institutions and shall not include the private offices of physicians or dentists, whether in individual, group, professional corporation or professional association practice. This section shall not apply to county or district health departments."

(Emphasis added.) Section 22-21-25(a), Ala. Code 1975, provides: "The State Board of Health may grant licenses for the operation of hospitals which are found to comply with the provisions of [the Hospital Act, as amended,] and any regulations lawfully promulgated by the State Board of Health." Section 22-21-28(a), Ala. Code 1975, provides, in pertinent part:

3

"In the manner provided in this section, the State Board of Health ... shall have the power to make and enforce, and may modify, amend, and rescind, reasonable rules and regulations governing the operation and conduct of hospitals as defined in [Ala. Code 1975, §] 22-21-20."[1]

In 1987, the State Board of Health, expressly relying on the Hospital Act, as amended, promulgated rules governing the operation of birthing centers. Under the 1987 regulations, "birthing center" was defined as

"a publicly or privately owned facility, place or institution constructed, renovated, leased or otherwise established where nonemergency births are planned to occur away from the mother's usual residence following a documented period of prenatal care for a normal uncomplicated pregnancy which has been determined to be low risk through a formal risk scoring examination."

Former Ala. Admin. Code (State Bd. of Health), r. 420-5-13-.01(1)(d). "Freestanding birthing center" was defined as "a separate and distinct

_____

[1]Before October 1, 2024, the State Board of Health and the Alabama Committee of Public Health were treated synonymously for the purposes of Title 22 of the Alabama Code of 1975. See former Ala. Code 1975, § 22-1-1. Effective October 1, 2024, the legislature abolished the State Board of Health and provided that all references in the Alabama Code to the State Board of Health and the Alabama Department of Public Health should be construed to mean the State Committee of Public Health. See Ala. Acts 2024, Act No. 24-247, § 1 (codified at Ala. Code 1975, § 22-1-1, § 22-2-1, and § 22-2-5). For the purposes of this opinion, we refer to the Alabama Department of Public Health and the former State Board of Health interchangeably.

facility or center or a separate and distinct organized unit of a hospital ... for the purpose of performing the service of a 'birthing center.'" Former Ala. Admin. Code (State Bd. of Health), r. 420-5-13-.01(1)(n). The regulations governed the administration of birthing centers, as well as the personnel, services, facilities, supplies, and equipment used by birthing centers. See former Ala. Admin. Code (State Bd. of Health), rr. 420-5-13-.01 through 420-5-13-.19. However, in 2010, at a time when no birthing centers were operating in Alabama, the State Board of Health repealed the 1987 birthing-center regulations.

In 2022, Oasis Family Birthing Center, LLC ("Oasis"), began operating a freestanding birthing center in Birmingham, and Alabama Birth Center ("ABC") was developing a freestanding birthing center in Huntsville. Dr. Scott Harris, the State Health Officer, acting as the executive and chief regulatory officer of the State Board of Health, see Hard v. State ex rel. Baker, 228 Ala. 517, 520, 154 So. 77, 80 (1934), requested a legal opinion from Attorney General Steve Marshall as to whether freestanding birthing centers could be regulated as "hospitals" under the Hospital Act, as amended. The attorney general opined that "[a] freestanding birth center that is primarily engaged in offering

5

obstetrical care to the public is a 'hospital,' as defined by section 22-21-20(1) of the Code of Alabama and must be licensed by the Alabama State Board of Health." Att'y Gen. Op. No. 2023-012 (Dec. 15, 2022). The attorney general continued:

> "Obstetrics is '[t]he branch of medicine that concerns management of women during pregnancy, childbirth, and the puerperium.' Obstetrics, Taber's Cyclopedic Medical Dictionary (18 ed. 1997). The puerperium is '[t]he period of 42 days following childbirth....' Puerperium, Taber's Cyclopedic Medical Dictionary (18 ed. 1997). Thus, a freestanding birth center is engaged in offering obstetrical care if it concerns the management of women during pregnancy, childbirth, and the puerperium. Whether a freestanding birth center is primarily engaged in offering obstetrical care requires a factual determination that must be made by the [State Board of Health] as this Office only makes determinations of law. Ala. Code [1975,] § 36-15-1(1)(a) & (b) (2013). If the [State Board of Health] determines that a freestanding birth center is primarily engaged in offering obstetrical care, then the freestanding birth center is a 'hospital' as defined by section 22-21-20(1) of the Code and must be licensed by the [Alabama State Board of Health]."

Id.

In 2022 and 2023, the State Board of Health developed new regulations governing freestanding birthing centers and notified the public that it intended to adopt those regulations. See Ala. Code 1975, § 41-22-5 (governing adoption of administrative rules). After receiving and responding to public comments, in August 2023 the State Board of Health

formally adopted the new regulations governing freestanding birthing centers ("the 2023 regulations"), which became effective October 15, 2023. See Ala. Admin. Code (State Bd. of Health), rr. 420-5-13-.01 through -.19.

The 2023 regulations define "birthing center" as

"a publicly or privately owned health care facility, place, or institution, constructed, renovated, leased, or otherwise established, where nonemergency births are planned to occur away from the mother's usual residence following a documented period of prenatal care for a low risk patient, as defined herein. Such facility, place, or institution must be a freestanding unit, not part of a hospital or other facility licensed for other purposes by the State Board of Health, and hold itself out to the public as a birthing center by advertising by some public means, such as a newspaper, directory, a website, the Internet, etc."

Ala. Admin. Code (State Bd. of Health), r. 420-5-13-.01(2)(b). "Freestanding" is defined as "a separate and distinct health care facility, place, or institution, constructed, renovated, leased, or otherwise established, for purposes of these rules, to provide the services of a birthing center." Ala. Admin. Code (State Bd. of Health), r. 420-5-13-.01(2)(j). Like the 1987 regulations, the 2023 regulations cover the administration, staffing, record keeping, services, patient care, rights, responsibilities, quality assurance, reporting, and physical environment

7

of freestanding birthing centers.  Ala. Admin. Code (State Bd. of Health), rr. 420-5-13-.01 through -.19.

Procedural Background

On August 8, 2023, Oasis; Dr. Heather Skanes, the founder and executive director of Oasis; ABC; Dr. Yashica Robinson, the founder and medical director of ABC; the Alabama Affiliate of the American College of Nurse-Midwives;[2] and others ("the plaintiffs") commenced a civil action in the Montgomery Circuit Court ("the circuit court") against the Alabama Department of Public Health ("the ADPH") and Dr. Harris, in his official capacity as the State Health Officer.  In the complaint, the plaintiffs alleged, among other things, that the ADPH and Dr. Harris were interfering with the ability of Oasis and ABC to operate their freestanding birthing centers by proposing onerous regulations beyond the ADPH and Dr. Harris's statutory authority.

On January 19, 2024, after the ADPH adopted the 2023 regulations, the plaintiffs filed an amended complaint adding two new

---

[2]The American College of Nurse-Midwives is the nationwide professional association of certified nurse-midwives and sets the national standards for nurse-midwifery education and practice in the United States.  The Alabama affiliate is the primary organization representing certified nurse-midwives in this state.

plaintiffs -- Jo Crawford, a certified professional midwife working for Oasis, and Tracie Stone, a certified professional midwife who ultimately became the clinical director for ABC. In count one of the amended complaint ("Count One"), the plaintiffs collectively alleged:

> "194. Under Alabama law, a 'hospital,' for purposes of [the] ADPH's regulatory and licensing authority, includes, inter alia, 'institution[s] primarily engaged in offering to the public generally ... obstetrical care.' Ala. Code [1975,] § 22-21-20(1).

> "195. The ADPH's determination that any and all freestanding birth centers are 'hospitals' for purposes of its regulatory and licensing authority under section 22-21-20(1), including but not limited to ... adopting regulations for freestanding birth centers, Ala. Admin. Code [r]r. 420-5-13-.01 to -.19, constitutes a rule under the [Alabama Administrative Procedure Act, [Ala. Code 1975, § 41-22-1 et seq.,] because it is a 'standard[] or statement of general applicability that implements, interprets, or prescribes law or policy.' Ala. Code. [1975,] § 41-22-3(9) ....

> "196. Because a freestanding birth center operating under the midwifery model of care is not engaged in offering obstetrical care to the public generally, it does not fall within [the] ADPH's hospital regulatory and licensing authority.

> "197. Therefore, [the] ADPH's adoption of the rule that any and all freestanding birth centers operating under the midwifery model of care are 'hospitals' for purposes of its regulatory and licensing authority, including through the adoption of regulations for freestanding birth centers and its application of that rule to Plaintiffs [Oasis], ABC, and any other similarly situated birth centers that may be owned, operated, or staffed by the individual Plaintiffs or Plaintiff

[Alabama Affiliate of the American College of Nurse-Midwives'] members, exceeds [the] ADPH's statutory authority in violation of Alabama Code [1975,] § 41-22-10."

The plaintiffs requested that the circuit court enter a judgment declaring that freestanding birthing centers operating in the midwifery model of care are not "hospitals" under § 22-21-20(1) and, therefore, that the ADPH and Dr. Harris had no authority to require such freestanding birthing centers to obtain a hospital license or to otherwise regulate such freestanding birthing centers and that any such attempts to do so exceeded their statutory authority. The plaintiffs further requested that the circuit court permanently enjoin the ADPH and Dr. Harris from requiring freestanding birthing centers operating in the midwifery model of care to obtain a hospital license and from taking any adverse action against such freestanding birthing centers for operating without a hospital license.

On January 14, 2025, the parties entered into a joint stipulation of facts for the purpose of resolving Count One. The parties stipulated to, among other things:

"13. A [freestanding birthing center] provides pregnancy, birthing, postpartum, and limited newborn care in a home-like environment to low-risk patients who have been clinically screened and receive continuous risk assessment to

proactively identify risk factors or complications that could arise during pregnancy or birth and affect the patients' ability to be safely cared for in [a freestanding birthing center].

"14. [Freestanding birthing centers] are independent, autonomous health care centers and are not attached to or organized as part of a general or specialized hospital or other acute care facility.

"....

"19. Plaintiffs [Oasis] and ABC operate ... [freestanding birthing centers] through [certified nurse midwives] and [certified professional midwives], utilizing a midwifery model of care.

"20. Midwifery care is a patient-centered health care model for pregnancy-related care with a focus on shared decision-making, patient education, and physiological birth with minimal technological interventions to initiate or augment labor.

"21. Midwifery is practiced by trained midwives with a different skill set, education, and training background than obstetricians, who are licensed and regulated by the Alabama State Board of Medical Examiners. Ala. Code [1975,] § 34-24-330, et seq.

"22. Two kinds of midwives are licensed to practice in Alabama: [certified nurse midwives] and [certified professional midwives]. Both kinds of midwives provide care in the midwifery model but fulfill different educational and training requirements.

"23. [Certified nurse midwives] are advanced practice registered nurses licensed and regulated by the Alabama Board of Nursing to engage in practice as a nurse midwife. [Certified nurse midwives] must complete a nursing program

11

qualifying them as a registered nurse, in addition to specialized training and certification in nurse midwifery. Ala. Code [1975,] §§ 34-21-81(1), (2)(b).

"24. In Alabama, [certified nurse midwives] are required to maintain [collaborative practice agreements] with licensed physicians as a condition of their advanced practice. Ala. Code [1975,] §§ 34-21-81(1), (5), 34-21-83, -84, -85, -90.

"25. A [certified nurse midwife]'s scope of practice includes care during pregnancy, childbirth, and the postpartum period, and care for the healthy newborn during the first weeks of life. [Certified nurse midwives] may conduct patient examinations; prescribe and administer certain medications; make decisions about patient admission, management, and discharge; and order and interpret laboratory testing.

"26. [Certified professional midwives] are licensed and regulated by the Alabama State Board of Midwifery. Ala. Code [1975,] §§ 34-19-12(a), -14, -15. [Certified professional midwives] must be credentialed through an education program or pathway accredited by the Midwifery Educational Accreditation Council or by another accrediting agency recognized by the United States Department of Education. Ala. Code [1975,] § 34-19-15(a)(3).

"27. A [certified professional midwife]'s scope of practice encompasses the provision of care, counseling, and education throughout pregnancy, birth, and the postpartum period; making diagnoses; recognizing conditions requiring consultation or referral to other healthcare providers; administering medications; ordering and interpreting lab and diagnostic tests; providing continuous, hands-on care during labor and delivery; and providing maternal and well-baby care through 6-8 weeks postpartum.

"28. Surgical and vaginal operative deliveries are not available in [the birthing centers operated by Oasis] and ABC, and these procedures are outside the scope of practice of the licensed midwives who work at [the birthing centers operated by Oasis] and ABC.

"29. [Oasis] and ABC pre-screen patients who might otherwise be eligible to deliver in [a freestanding birthing center] to ensure that they agree to forgo medicated pain management during labor and agree to complete education components to ensure that they are prepared for unmedicated labor and early home discharge, among other conditions.

"....

"32. [Oasis] provides midwifery services for pregnancy-related care, including births, and neonatal care through six weeks after birth, utilizing the midwifery model of care. [Oasis] also provides patient education and counseling, including education on breastfeeding, preparing for childbirth, and newborn care.

"33. At [the birthing centers operated by Oasis], [certified professional midwives] or a dually licensed [certified professional midwife/certified nurse midwife] conduct all prenatal and postpartum visits and attend births in the birthing center, with assistance from registered nurses ..., birth assistants, and/or student midwives, some of whom are also trained as doulas and lactation consultants. Every birth is attended by staff with training in basic life support and neonatal resuscitation.

"34. All patients at [the birthing centers operated by Oasis] are pre-screened and receive continuous risk assessment to ensure that they remain eligible for birthing care in the birth center. Patients who develop risk factors are referred for consultation with Dr. Skanes through her private practice and, where appropriate, transferred to an

[obstetrician/gynecologist] for births at a general or specialized hospital.

"....

"36. ABC provides midwifery services for pregnancy-related care, including births, and neonatal care through six weeks after birth, utilizing the midwifery model of care. ABC also provides extensive patient education and counseling, including education on breastfeeding, preparing for childbirth, and newborn care.

"37. At [the birthing centers operated by] ABC, [certified professional midwives] or [certified nurse midwives] conduct all prenatal and postpartum visits and will attend births in the birthing center, with assistance from [registered nurses] and/or student midwives, who also serve as birth assistants. ABC also employs doulas and lactation consultants. Every birth is attended by staff with training in basic life support and neonatal resuscitation.

"38. All patients at [the birthing centers operated by] ABC are pre-screened and receive continuous risk assessment to ensure that they remain eligible for birthing care in the birth center. Patients who develop risk factors are referred for consultation with Dr. Robinson through her private practice and, where appropriate, transferred to her care for births at a general or specialized hospital."

On January 15, 2025, the ADPH and Dr. Harris moved for a partial summary judgment on Count One. On February 5, 2025, the plaintiffs filed a motion for a partial summary judgment on Count One. The parties agreed that the cross-motions for a partial summary judgment presented a question of law as to whether, based on the undisputed material facts,

14

freestanding birthing centers operating in the midwifery model of care, like the birthing centers operated by Oasis and ABC, are "hospitals" within the definition of § 22-21-20(1), i.e., are health-care institutions "primarily engaged in offering to the public generally ... obstetrical care." If so, the 2023 regulations would be valid and enforceable against Oasis, ABC, and other similar freestanding birthing centers; if not, the 2023 regulations would be invalid and unenforceable against Oasis, ABC, and other operators of similar freestanding birthing centers.

On May 1, 2025, the circuit court entered an order granting the plaintiffs' motion for a partial summary judgment on Count One. In the order, which was amended on May 7, 2025, the circuit court determined that freestanding birthing centers operating in the midwifery model of care are not "hospitals" within the definition of § 22-21-20(1) because, it said, they do not offer "obstetrical care" to "the public generally." The order further provided:

> "The Court hereby DECLARES pursuant to the Alabama Declaratory Judgment Act, Ala. Code [1975,] § 6-6-222, and the Alabama Administrative Procedure Act, [Ala. Code 1975,] § 41-22-10, that freestanding birth centers operating in the midwifery model of care are not 'hospitals' under section 22-21-20(1) of the Alabama Code [1975,] and, therefore, [the] ADPH and [Dr.] Scott Harris, in his official capacity as the State Health Officer for [the] ADPH, have no authority to

require such freestanding birth centers to obtain a license under [§] 22-21-22 of the Alabama Code [1975] or to otherwise regulate such freestanding birth centers, and that any such attempts to do so exceed [the ADPH's and Dr. Harris]'s statutory authority ...; and FURTHER PERMANENTLY ENJOINS [the ADPH and Dr. Harris] from requiring freestanding birth centers operating in the midwifery model of care to seek and obtain a 'hospital' license under section 22-21-22 of the Alabama Code [1975], and further from taking any adverse action against such entities, their owners, founders, or staff (including Plaintiffs and their members) for failing to seek or obtain such a license, including but not limited to threatening or seeking criminal or civil penalties under section 22-21-33 of the Alabama Code [1975]."

(Capitalization in original.) On May 26, 2025, the circuit court certified the order as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The ADPH and Dr. Harris timely appealed.[3] This court heard oral arguments on November 18, 2025.

## Issue

In this appeal, Dr. Harris argues that the circuit court erred in entering the partial summary judgment in favor of Oasis, ABC, and the

---

[3]Upon a stipulation of the parties, this court dismissed the ADPH as an appellant because all orders and judgments entered against the ADPH, which is a state agency that is immune from suit pursuant to § 14 of the Alabama Constitution of 2022, are void, and a void judgment will not support an appeal. See Alabama Dep't of Pub. Health v. TSTL Holdings, LLC, [Ms. CL-2024-0604, Apr. 25, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025).

16

other plaintiffs and that it erred in denying him a summary judgment. See Mountain Lakes Dist. v. Oak Grove Methodist Church ex rel. Green, 126 So. 3d 172, 180 (Ala. Civ. App. 2013) ("Where cross-motions for a summary judgment are filed in the trial court, the party whose motion was not granted is entitled to have that motion reviewed on an appeal from the grant of the opponent's motion ...."). Dr. Harris maintains that the statutory definition of "hospitals" contained in § 22-21-20(1), when applied to the undisputed facts, shows that the ADPH has the statutory authority to regulate freestanding birthing centers operating in the midwifery model of care. Dr. Harris also maintains that the circuit court erred in enjoining him in his official capacity as the State Health Officer from enforcing the Hospital Act, as amended, and the 2023 regulations against freestanding birthing centers operating in the midwifery model of care.

Standard of Review

We review de novo the grant or denial of a motion for a summary judgment in an action commenced pursuant to Ala. Code 1975, § 41-22-10, which is a part of the Alabama Administrative Procedure Act ("the

AAPA"), Ala. Code 1975, § 41-22-1 et seq. See <u>Keith v. LeFleur</u>, 400 So.

3d 608, 614 (Ala. Civ. App. 2023).

> "[I]t is well settled that a motion for a summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Ala. R. Civ. P.; <u>Wilbanks v. United Refractories, Inc.</u>, 112 So. 3d 472 (Ala. 2012). Where all the basic facts are undisputed and the matter is one of interpretation or of reaching a conclusion of law by the court, a summary judgment may be appropriate. <u>Bible Baptist Church v. Stone</u>, 55 Ala. App. 411, 316 So. 2d 340 (1975). Statutory interpretation -- particularly interpretation of the effect of a statute where the facts are undisputed -- is primarily a legal question amenable to summary judgment. <u>Continental Nat'l Indem. Co. v. Fields</u>, 926 So. 2d 1033 (Ala. 2005). When the facts are undisputed, this Court reviews de novo the trial court's interpretation of statutory language."

<u>Ex parte Chesnut</u>, 208 So. 3d 624, 636 (Ala. 2016).

<u>Analysis</u>

Section 41-22-10 provides, in pertinent part:

> "The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief in the circuit court of Montgomery County, unless otherwise specifically provided by statute, if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. ... In passing on such rules the court shall declare the rule invalid only if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with rulemaking procedures provided for in [the AAPA]."

18

The plaintiffs alleged in Count One, and the circuit court determined, that the 2023 regulations were invalid because the ADPH had exceeded its statutory authority by treating freestanding birthing centers operating in the midwifery model of care as "hospitals" within the meaning of § 22-21-20(1). Whether the ADPH exceeded its statutory authority in adopting the 2023 regulations depends primarily on the meaning of the term "hospitals."

Notably, the legislature included a special definition of "hospitals" within § 22-21-20(1). "It is well recognized that when the Legislature defines the language it uses, its definition is binding upon the courts, even though this definition does not coincide with the ordinary meaning of the words used." McWhorter v. State Bd. of Registration for Prof'l Eng'rs & Land Surveyors ex rel. Baxley, 359 So. 2d 769, 773 (Ala. 1978). Ordinarily, freestanding birthing centers are not considered to be hospitals. See Birth Center, Taber's Cyclopedic Medical Dictionary (18th ed. 1997) (defining "birth center" as "[a]n alternative nonhospital facility that provides family-oriented maternity care for women judged to be at low risk of experiencing obstetrical complications" (emphasis added)). However, the term "hospitals" is broadly defined in § 22-21-20(1) to

19

include not only traditional hospitals, but also "health care institutions when such institution is primarily engaged in offering to the public generally, facilities and services for the diagnosis and/or treatment of injury, deformity, disease, surgical or obstetrical care." Thus, a freestanding birthing center may qualify as a "hospital" if it satisfies the legislative criteria established in § 22-21-20(1). The parties do not dispute that freestanding birthing centers operating in the midwifery model of care are health-care institutions, but they disagree as to whether those centers offer facilities and services for "obstetrical care" "to the public generally."

## "Obstetrical Care"

The term "obstetrical care" is not defined in the Hospital Act, as amended. When the legislature leaves a term undefined, the courts will apply the common meaning of that term.

> "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."

IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992). "[T]his Court regularly looks to dictionary definitions to ascertain the plain meaning of words used in a statute." State v. City of Birmingham, 299 So. 3d 220, 226 (Ala. 2019).

The current version of Merriam-Webster's Collegiate Dictionary defines the word "obstetrical" to mean "of, relating to, or associated with childbirth or obstetrics." Merriam-Webster's Collegiate Dictionary 857 (11th ed. 2020) (emphasis added). Under that definition, "obstetrical care" refers most broadly to care relating to or associated with "childbirth," which, synonymous with "parturition," means "the action or process of giving birth to offspring," id. at 904, but it also can refer more specifically to care relating to or associated with "obstetrics," "a branch of medical science that deals with birth and with its antecedents and sequels."[4] Id. at 857. The legislature did not clarify which of the two alternative meanings it intended, but a review of the history and purpose

_____

[4]Citing Attorney General Opinion No. 2023-012 (Dec. 15, 2022), the parties stipulated that "obstetrics" means " '[t]he branch of medicine that concerns management of women during pregnancy, childbirth, and the puerperium,' Obstetrics, Taber's Cyclopedic Medical Dictionary (18th ed. 1997)." This court finds that this definition does not conflict with the general dictionary definition of the word.

of the Hospital Act, as amended, suggests that it did not intend the more limited meaning of "obstetrical care."  See Standard Oil Co. v. State, 55 Ala. App. 103, 110, 313 So. 2d 532, 537 (Civ. App. 1975) ("In ascertaining the purpose and intent of constitutional provision or statute, courts may look to history of times, existing order of things, state of law when instrument was adopted, and conditions necessitating its adoption.").

Historically, childbirth care was provided exclusively by midwives, but, eventually, medical doctors predominantly assumed the care of women during pregnancy and childbirth through the branch of medicine known as obstetrics.  See Stacey A. Tovino, American Midwifery Litigation and State Legislative Preferences for Physician-Controlled Childbirth, 11 Cardozo Women's L.J. 61 (2004).  The word "obstetrics" was derived from the Latin word "obstetrix," which, literally translated, meant "a midwife."  See Obstetrics, Stedmans Medical Dictionary 1250 (27th ed. 2000).  At one time, "[b]oth medical and popular lexicographers define[d] midwife as a female obstetrician, and midwifery as the practice of obstetrics." Commonwealth v. Porn, 196 Mass. 326, 327, 82 N.E. 31, 31 (1907).  By the early 20th century, however, the medical practice of obstetrics had become more specialized, especially in treating

22

complicated pregnancies, and midwives were not allowed to practice obstetrics. Id. Midwifery, as a form of obstetrical care, was limited to "ordinary assistance in the normal cases of childbirth." Id.

In 1919, the Alabama Legislature enacted a law authorizing the State Board of Health to regulate midwifery. Ala. Acts 1919, Act No. 658, § 13. The 1919 act made it unlawful for any person to practice as a midwife, defined as a nonphysician who attends a woman at childbirth, without obtaining a certificate of approval from the county board of health. Id. To obtain a certificate of approval, an applicant had to present to the county board of health "satisfactory evidence of having or possessing sufficient knowledge and skill in the art of midwifery." Id. The legislature directed the State Board of Health to develop an application to examine the knowledge and skill of prospective midwives, and, if, upon examination, the applicant was deemed sufficiently qualified, the county board of health would issue the certificate of approval, and the applicant would become a registered midwife. Id. The 1919 act allowed registered midwives to continue to practice traditional obstetrical care by assisting with normal childbirths, but it did not allow

23

midwives to practice obstetrical care in the relatively new branch of medicine -- obstetrics -- like a licensed physician.

Between 1919 and 1949, across the country, most women obtained childbirth care from medical doctors who were trained in obstetrics, but, in Alabama, registered midwives continued to provide a significant percentage of childbirth care. Tovino, supra. Thus, when the legislature adopted the Hospital Act in 1949, it was understood that both licensed physicians practicing obstetrics and midwives practicing the art of midwifery were providing obstetrical, or childbirth, care. Against this backdrop, the legislature elected to grant to the State Board of Health, the same agency overseeing the regulation of midwives, the power to license and to regulate institutions offering "obstetrical care" without distinguishing between the care provided by physicians and the care provided by midwives.

In construing a statute, this court's duty is to "ascertain and effectuate the legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." Bama Budweiser of Montgomery,

Inc. v. Anheuser-Busch, Inc., 611 So. 2d 238, 248 (Ala. 1992). The stated purpose of the Hospital Act, as amended, is

> "to promote the public health, safety and welfare by providing for the development, establishment and enforcement of standards for the treatment and care of individuals in institutions within the purview of [the Hospital Act, as amended,] and the establishment, construction, maintenance and operation of such institutions which will promote safe and adequate treatment and care of individuals in such institutions."

Ala. Code 1975, § 22-21-21. The legislature obviously intended that "hospitals" providing "obstetrical care," the care carried out in 1949 by licensed physicians and by registered midwives, should be regulated to ensure the safety and well-being of the pregnant women admitted in those hospitals. We do not believe that the legislature intended that only institutions utilizing obstetrics to treat pregnant women should be treated as "hospitals" and be regulated by the ADPH while institutions providing alternative midwifery care, which implicates identical health and safety concerns, should not be considered "hospitals" and should not be regulated by the ADPH. In determining whether an institution is "within the purview" of the Hospital Act, as amended, the inquiry focuses on the nature of the services provided in the institution, not on the identity and qualifications of the person providing those services. See

25

Tucker v. State Dep't of Pub. Health, 650 So. 2d 910, 914 (Ala. Civ. App 1994) (holding that "'[t]he regulation of the operation of a defined health care facility ... is the regulation of what takes place there ....'" (quoting and adopting trial court's order)).

The legislature has amended the Hospital Act several times since 1949, see Ala. Acts 1975, Act No. 75-140, § 1; Ala. Acts 1979, Act No. 79-798; Ala. Acts 1991, Act. No. 91-548, § 1; Ala. Acts 2001, Act No. 2001-1058, § 1, but it has always maintained that "hospitals" include health-care institutions offering facilities and services for "obstetrical care."  As noted earlier, in 1987, the State Board of Health interpreted § 22-21-20 to authorize it to regulate freestanding birthing centers.  Although the regulations adopted by the State Board of Health were later repealed in 2010, it was not because the legislature changed the law to prohibit the ADPH from enforcing those regulations.  The legislature has never excluded freestanding birthing centers from the definition of "hospitals" in § 22-21-20(1).  "[W]hen the statute has been reenacted or amended a number of times since the promulgation of the administrative interpretation, such may be considered legislative approval of the

administrative construction." <u>Pilgrim v. Gregory</u>, 594 So. 2d 114, 119 (Ala. Civ. App. 1991).

The legislature has also amended the laws governing the practice of midwifery several times. In 1976, the legislature temporarily outlawed the practice of midwifery except by certified nurse midwives. <u>See</u> Ala. Acts 1976, Act. No. 76-499. In 1995, the legislature defined the scope of the practice of certified nurse midwives to include only "performance of nursing skills ... relative to the management of women's health care focusing on pregnancy, childbirth, the post-partum period, care of the newborn, family planning and gynecological needs of women ...." Ala. Acts 1995, Act No. 95-263, § 2(4)b., codified at Ala. Code 1975, § 34-21-81(2)b. In 2017, the legislature revived lay midwifery by permitting persons other than registered nurses to become licensed, or certified professional, midwives. <u>See</u> Ala. Acts 2017, Act No. 17-383, codified at Ala. Code 1975, § 34-19-11 et seq. However, those changes have not altered the basic concept of midwifery as involving childbirth care without the practice of medicine. Under current statutory law, "midwifery" means "the provision of primary maternity care during the antepartum, intrapartum, and postpartum periods," Ala. Code 1975, §

34-19-11(3), and midwives are barred from practicing medicine. See Ala. Code 1975, § 34-19-18(b). Presently, midwives perform the same type of "obstetrical care," assisting with normal childbirth cases without practicing obstetrics, as they did when the Hospital Act was first passed.

The Alabama Board of Nursing and the Alabama Board of Medical Examiners now regulate the practice of certified nurse midwifery, see Ala. Admin. Code (Bd. of Nursing), r. 610-x-5-.14 et seq., and Ala. Admin. Code (State Bd. of Med. Exam'rs), r. 540-x-8-.17 et seq., and the Alabama Board of Midwifery regulates the practice of licensed midwifery, see Ala. Admin. Code (Bd. of Midwifery), r. 582-x-1-.01 et seq. However, none of those state agencies have been granted the authority to regulate freestanding birthing centers, even those operating in the midwifery model of care, and none of those state agencies has attempted to regulate freestanding birthing centers. If freestanding birthing centers are not "hospitals" within the meaning of § 22-21-20(1), they would not be subject to regulation by any state agency. We do not believe the legislature intended that a health-care institution providing childbirth care to a multitude of pregnant women should be out of the reach of the regulatory authority of the state agency responsible for protecting public health and

28

safety when the law can be easily construed to prevent that outcome. In seeking to ascertain legislative intent, a court may consider the consequences resulting from one meaning rather than another and may adopt the construction that avoids an illogical, unreasonable, or unfair result. See Studdard v. South Cent. Bell Tel. Co., 356 So. 2d 139, 142 (Ala. 1978); State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 233, 66 So. 2d 726, 731 (1953).

Of course, obstetricians, gynecologists, family practitioners, and other licensed physicians also practice "obstetrical care." Section 22-6-40, Ala. Code 1975, the only other Alabama statute using the term "obstetrical care," recognizes that fact. However, that statute, which solely addresses Medicaid financing and adjustment of insurance premiums for obstetricians, pediatricians, and family practitioners, does not provide that only medical practitioners can provide "obstetrical care," and it does not in any way exclude midwifery as a form of "obstetrical care." Although licensed physicians provide a different, more specialized form of "obstetrical care," that does not mean that midwives do not also provide "obstetrical care." Our legislature has impliedly recognized this fact by prohibiting midwives from administering or performing certain

29

"obstetric procedures which are outside of the scope of the licensed practice of midwifery," Ala. Code 1975, § 34-19-14(c), without prohibiting them from engaging in other types of "obstetrical care."

In his opinion, the attorney general defined "obstetrical care" as "the management of women during pregnancy, childbirth, and the puerperium." Att'y Gen. Op. No. 2023-012 (Dec. 15, 2022). We are persuaded by that opinion, see HealthSouth Corp. v. Jefferson Cnty. Tax Assessor, 978 So. 2d 737, 741 (Ala. Civ. App. 2006), aff'd, 978 So. 2d 745 (Ala. 2007), which, we conclude, encompasses the long-standing definition of midwifery as well as the medical practice of obstetrics. Thus, if a freestanding birthing center offers either facilities or services related to or associated with midwifery or facilities or services related to or associated with the practice of obstetrics, or both, the freestanding birthing center is providing "obstetrical care."

It is undisputed that Oasis's and ABC's freestanding birthing centers operating in the midwifery model of care utilize certified professional midwives and certified nurse midwives to provide childbirth-related care to their patients during antepartum, intrapartum, and

postpartum periods. Therefore, as a matter of law, they are providing "obstetrical care" within the meaning of § 22-21-20(1).

"The Public Generally"

We now address the remaining disputed question of law -- whether Oasis and ABC were primarily engaged in offering obstetrical care "to the public generally" within the meaning of § 22-21-20(1). When used in the context of a business providing a product or services, the phrase "to the public generally" commonly means that the business solicits its customers from the public at large, or from a considerable segment of the public, as opposed to limiting its customer base to select individuals through private contracts. See Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm'n, 524 So. 2d 357 (Ala. 1988) (holding that a natural gas company was not a public utility because it offered its product only to certain businesses with whom it entered into private contracts and not to the general public). When a business invites the public, or a subset of the public, to apply for the use of its facilities or services, it serves "the public generally" even if it screens those applicants to ensure that they meet the requirements for using the facilities or services. See State ex rel. Washington Univ. v. Richardson, 396 S.W.3d 387, 396 (Mo.

Ct. App. 2013) (holding that public university that invited the public to apply to a Master of Fine Arts program was a business "offering ... to the general public" its facilities and services and that it was, in fact, open to the public even though it admitted only those applicants meeting its eligibility criteria).

In addition to the stipulations above, the plaintiffs presented uncontradicted affidavits of several witnesses in support of their motion for a partial summary judgment. The undisputed evidence from those affidavits establishes that Oasis's and ABC's birthing centers were opened to provide greater access to pregnancy-related care for the benefit of the Birmingham and Huntsville communities, particularly low-income and marginalized populations who, historically, have suffered inequitable disparities in receiving obstetrical care. Oasis and ABC offer the midwifery model of care to low-risk patients who do not have preexisting or pregnancy-related conditions that increase the risk of pregnancy complications. Oasis and ABC screen their patients at intake and throughout the childbirth process to ensure that they remain eligible for midwifery care, and, if a high risk of complication is identified, the patient is transferred to an appropriate health-care provider. Before

32

admitting a patient, Oasis and ABC also obtain informed consent to their policies, which are consistent with the midwifery model of care. If a patient meets all eligibility requirements and consents to midwifery care, Oasis and ABC offer their facilities and services to them. The patients at Oasis and ABC are predominantly, but not exclusively, women of color.

The screening process is not unique to Oasis and ABC. By law, licensed midwives may provide midwifery care relating to only normal pregnancies and childbirth. See Ala. Admin. Code (Bd. of Midwives), r. 582-X-3-.03(1). Midwives are required to obtain informed consent from the patient regarding the midwifery care she will receive. See Ala. Admin. Code (Bd. of Midwives), r. 582-X-3-.03(3)(h) and r. 582-X-3-.04(d). Midwives must also perform risk assessments at all stages of the childbirth process. See Ala. Admin. Code (Bd. of Midwives), r. 582-X-3-.08. If a risk of complication is identified, a midwife is required to consult with a physician, see Ala. Admin. Code (Bd. of Midwives), r. 582-X-3-.05, and, if necessary, transfer the care of the patient to an appropriate physician. See Ala. Admin. Code (Bd. of Midwives), r. 582-X-3-.06. By screening patients to ensure that they do not require medical care, Oasis and ABC are only complying with the legal midwifery standards.

33

As a matter of law, Oasis and ABC offer their facilities and midwifery services to the public generally because they invite the population of pregnant women in their communities to apply to use those facilities and services. The fact that Oasis and ABC screen the applicants to ensure that they meet the eligibility standards to receive midwifery care does not alter that conclusion. Likewise, freestanding birthing centers like those operated by Oasis and ABC are not required to provide the use of their facilities or midwifery services to any woman who presents in labor, like an emergency department of a traditional hospital, see 42 U.S.C. § 1395dd(b) & (e), but that does not mean that they do not offer those facilities and services to the public generally.

## Summary Judgment

Summary judgment shall be rendered if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. Based on our de novo review, we conclude that there is no genuine issue of material fact and that Dr. Harris is entitled to a judgment as a matter of law on Count One. Freestanding birthing centers operating in the midwifery model of care, like those operated by Oasis and ABC, are "hospitals" within the

34

definition of § 22-21-20(1) because they are health-care institutions "primarily engaged in offering to the public generally, facilities and services for ... obstetrical care." As such, the ADPH and Dr. Harris had the authority to regulate those institutions pursuant to § 22-21-28(a), and the 2023 regulations adopted by the ADPH are valid. We, therefore, reverse the judgment declaring the 2023 regulations invalid and render a judgment declaring that the ADPH did not exceed its statutory authority under § 22-21-28(a) in adopting the 2023 regulations.[5]

### The Injunction

We also reverse the judgment insofar as it granted a permanent injunction in favor of the plaintiffs. To obtain a permanent injunction, a movant must, among other things, demonstrate success on the merits. Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., 42 So. 3d 90, 93 (Ala. 2010). The injunction was based on the circuit court's determination that the ADPH and Dr. Harris lacked licensing authority over freestanding birthing centers operating in the midwifery model of care. As we have concluded, the birthing centers operated by Oasis and ABC are

---

[5]We do not express any opinion as to whether the 2023 regulations are invalid or inapplicable for any other reason.

35

"hospitals" as defined in § 22-21-20(1). Therefore, they are required to obtain a hospital license from the ADPH to operate. See Ala. Code 1975, § 22-21-22 and § 22-21-25(a). The plaintiffs have not succeeded on the merits of their claim in Count One, so the circuit court committed reversible error in granting the permanent injunction. Therefore, we reverse the judgment insofar as it granted injunctive relief, and we render a judgment for Dr. Harris denying that relief.

REVERSED AND JUDGMENT RENDERED.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.